IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

GARY COVINGTON; BETHANY WALKER;
BELINDA WALKER; and JAMES WALKER                                PLAINTIFFS

v.                      No. 2:13-cv-84-DPM

ULESS WALLACE, DALE ACOSTA,
TRAVIS WALLACE, and HERMAN HALL,
all individually and in their official capacities                DEFENDANTS

ORDER

This case is about two encounters when Officer Acosta of the Helena-West Helena Police Department allegedly violated the U.S. Constitution and Arkansas law. First, Gary Covington alleges that Acosta pepper-sprayed and beat him for no reason. Second, the Walkers—James, Belinda, and their daughter Bethany—allege that Acosta, again for no reason, shot at their car. Acosta has defaulted. Plaintiffs have also sued Chief Uless Wallace in his official capacity for failing to train his officers. That claim runs against the City of Helena-West Helena.

Plaintiffs have abandoned their individual-capacity claims against Chief Wallace, Officer Herman Hall, and Officer Travis Wallace. Although it's not 100% clear, there don't appear to be any official-capacity claims against

Officers Hall and Wallace. The Court will therefore dismiss those officers as defendants. The Walkers have also abandoned their felony-tort and battery claims against Acosta in his individual capacity. The Court has reviewed the undisputed material facts and, where there's some dispute, taken the record in plaintiffs' favor. *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003).

**1. Covington.** In October 2011, Officer Hall pulled Covington over for a defective taillight. Hall approached Covington's truck. While Hall was talking with Covington, Officer Acosta arrived. Hall left Acosta and Covington while Hall returned to his patrol car to call in Covington's name and license-plate number. Someone radioed back to Hall that Covington had an outstanding warrant on a failure-to-appear charge. Covington and Acosta both heard this response. Acosta became irate, yelled at Covington to get out of his truck, pepper-sprayed Covington without warning, and knocked Covington's glasses off. № 55-1 at 14–15 (deposition pagination). Covington, though his vision was blurred from the pepper-spray, could see that Acosta had readied his riot baton. № 55-1 at 15 (deposition pagination). Covington told Acosta that he'd leave his truck, but asked Acosta not to hit him with the baton. *Ibid.*

Covington got out of his truck and, on Acosta's command, faced the vehicle and put his hands behind his back. *Ibid.* Around this time, Hall returned and started handcuffing Covington. When Hall "squoze [the handcuff] down on" Covington's wrist, Covington "hollered a little bit." №55-1 *at 16* (deposition pagination). Acosta came up behind Covington and hit him two or three times in the head with the baton. *Ibid.* Acosta then grabbed Covington by the neck, threw him down, and punched him in the head. *Ibid.* Covington rolled over and told Acosta that he hoped the cameras in the police cars were capturing the beating. *Ibid.* Acosta replied that he didn't care and punched Covington in the mouth. № 55-1 *at 16–17* (deposition pagination).

Hall didn't see Acosta use the pepper-spray. And although Hall was present for most of the alleged beating, he says he doesn't know if Acosta punched Covington. № 58-4 *at 34* (deposition pagination). Covington ended up with a gash above his eyebrow, a broken tooth, an eye that was swollen shut, and busted lips. № 55-1 *at 18–19* (deposition pagination). A doctor treated Covington later at the jail and said that he could get by without stitches. № 55-1 *at 18–19* (deposition pagination).

**2. The Walkers.** In April 2012, the Helena-West Helena Police Department was notified that someone had carjacked a white Chevy Trail Blazer. The thief had shot the car's owner and left him severely wounded in the street. During the hunt for the carjacker/attempted murderer, the Walkers were driving home in their white Chevy Trail Blazer. The Walkers drove up to a scene of several police cars. One of the officers gestured for James to roll down his window. № 58-3 at 6 (deposition pagination). The officer looked at James and said, "get out of here." *Ibid.* As the Walkers were driving away, Acosta opened fire on their vehicle. Bullets pierced their Blazer, one narrowly missing Belinda and fifteen-year-old Brittany. № 55-5 at 25 (deposition pagination). The Walkers heard the shots, but didn't realize their vehicle was the target. It wasn't until several miles down the road that they pulled over and discovered the bullet holes.

The shooting upset the Walkers. Brittany cried the rest of the drive home. № 55-5 at 9 (deposition pagination). She slept with her parents for three nights and wouldn't let them turn off the bedroom lights. Each of the Walkers missed some work or school. № 58-3 at 10 (deposition pagination); № 55-5 at 15 (deposition pagination); № 55-5 at 23 (deposition pagination). Belinda was

prescribed medicines to help her sleep and to deal with her anxiety from the shooting. № 55-5 at 16 (deposition pagination) None of the Walkers has regained trust in the police. № 58-3 at 11 (deposition pagination); № 55-5 at 22–23 (deposition pagination).

**3. The City's Concessions.** Chief Wallace gave a deposition as the City's Rule 30(b)(6) witness. He testified that, when he took control of the Helena-West Helena Police Department in September 2011, several of his officers were untrained in the use of deadly force. № 58-2 at 9–10 & 15 (deposition pagination). He became chief about one month before the Covington incident. Members of the City Council knew about the training deficit, but the Council wouldn't fund Wallace's training efforts — in fact, the Council cut his training budget. № 58-2 at 39. The Walker incident occurred approximately seven months after Wallace took command. It wasn't until after the Covington and Walker incidents that Chief Wallace was able to adequately train his officers. № 58-2 at 38–39, 41–42 & 77 (deposition pagination). He testified that, had his officers been trained adequately, Acosta wouldn't have beaten Covington, № 58-2 at 31–32 (deposition pagination), or shot at the Walkers' Blazer, № 58-2 at 30 (deposition pagination).

**4. Remaining Issues.** There needs to be a trial. The failure-to-train claim against the City — through Chief Wallace — survives. Despite Acosta's default, the City may defend itself by showing that Acosta didn't violate the Constitution. It's unclear whether the plaintiffs pleaded a *Monell* unconstitutional-policy claim; but if they did, the record doesn't support it. *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 390–91 (8th Cir. 2007).

Covington hasn't sought judgment as a matter of law and neither have the Walkers. Jury questions remain on Covington's outrage, felony-tort, and battery claims against Acosta. The allegations that Acosta admitted by default show that he violated Covington's Fourth Amendment right to be free from unreasonable seizures, but not necessarily that he committed these torts. As for the Walkers, a jury needs to decide their claims of outrage and denial of substantive due process. Holes in the pleaded facts, and the lack of a dispositive motion, prevent the Court from going any deeper at this point. Plus Covington and the Walkers have the burden of proof. Long story short, there must be a trial.

\* \* \*

Motion, № 53, granted in part and denied in part. Officer Herman Hall and Officer Travis Wallace are dismissed as defendants. The Walkers' individual-capacity claims against Acosta for felony-tort and battery are dismissed without prejudice. Any unconstitutional-policy claim against the City (through Chief Wallace) is dismissed with prejudice.

So Ordered.

*/s/ W.P. Marshall Jr.*
D.P. Marshall Jr.
United States District Judge

27 January 2015